UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MANDINGO BOOBYYAA,

      Applicant,

v.                                  CASE NO. 8:13-cv-1301-T-23TGW

SECRETARY, Department of Corrections,

      Respondent.

_____/


**O R D E R**

      Boobyyaa applies under 28 U.S.C. § 2254 for the writ of habeas corpus

(Doc. 1) and challenges his convictions for burglary of a dwelling and dealing in

stolen property. Boobyyaa is imprisoned for a total of thirty years, which sentence

was imposed after the initially-imposed probation was revoked. Numerous exhibits

("Respondent's Exhibit __") support the response. (Doc. 7) The respondent argues

that some grounds are partially, procedurally barred from federal review, but

otherwise admits the application's timeliness. (Response at 6, Doc. 7)

**I. FACTS**[1]

      To avoid a sentence as a habitual felony offender, Boobyyaa pleaded guilty to

both burglary of a dwelling and dealing in stolen property in exchange for both the

_____

[1] This summary of the facts derives from Boobyyaa's brief on direct appeal. (Respondent's Exhibit 8) Additional facts are discussed later with each ground.

dismissal of another charge and concurrent sentences of three years' probation.   Five months later Corporal Yost of the Tampa Police Department responded to a "suspicious person" call.  When he arrived at the location he saw Hillsborough County Sheriff's Deputy Williams questioning Boobyyaa (whom the deputy had observed walking across a parking lot at approximately 3:00 a.m.), and, while the deputy was questioning Boobyyaa, Corporal Yost found a stolen vehicle in the parking lot.  Boobyyaa possessed the keys for the stolen vehicle.  Boobyyaa was arrested and placed into the back of the patrol car.  Before leaving the parking lot Corporal Yost removed Boobyyaa from the patrol car and, when he lifted the backseat, he discovered a glass pipe that contained cocaine residue.  According to Corporal Yost the glass pipe was not present before Boobyyaa was placed inside the vehicle.

Boobyyaa was found guilty of violating a condition of probation, specifically, the possession of drug paraphernalia.  Boobyyaa's probation was revoked and he was sentenced to fifteen years' imprisonment on each of the two original charges, with the sentences to run consecutively.[2]  The present application challenges the validity of both the revocation of probation and the subsequent consecutive sentences but neither the validity of the underlying guilty plea nor the original charges.

---

[2]  After finding that Boobyyaa violated a term of his probation, the sentencing court stated, "Mr. Boobyyaa has at least, let's see, two, four, five, six, nine, ten, eleven prior felony convictions and fourteen prior misdemeanor convictions." (Respondent's Exhibit 6 at 134)

## II.  STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
>> (1) resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an
>> unreasonable determination of the facts in light of
>> the evidence presented in the State court
>> proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court.  Under § 2254(d)(1), the writ may issue only
> if one of the following two conditions is satisfied — the state-
> court adjudication resulted in a decision that (1) "was contrary to
> . . . clearly established Federal Law, as determined by the
> Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States."  Under
> the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court

> decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a

vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Boobyyaa's convictions and sentence. (Respondent's Exhibit 12) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Boobyyaa's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 41) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Boobyyaa bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Boobyyaa's post-conviction claims warrants deference in this case. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 27, 33, 38, and 46)

### III.  INEFFECTIVE ASSISTANCE OF COUNSEL

Boobyyaa claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d

1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or

omissions were outside the wide range of professionally competent assistance."
466 U.S. at 690.

Boobyyaa must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Boobyyaa must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Boobyyaa cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting*

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  How extensive of an investigation that

counsel must perform was recently addressed in *Hittson v. GDCP Warden*, 759 F.3d

1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126

(2015):

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d
> at 1317. "[C]ounsel has a duty to make *reasonable* investigations
> or make a *reasonable* decision that makes particular
> investigations unnecessary." *Strickland*, 466 U.S. at 691, 104
> S. Ct. at 2066 (emphasis added). "[C]ounsel need not always
> investigate before pursuing or not pursuing a line of defense.
> Investigation (even a nonexhaustive, preliminary investigation)
> is not required for counsel reasonably to decline to investigate a
> line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In
> assessing the reasonableness of an attorney's investigation . . . a
> court must consider not only the quantum of evidence already
> known to counsel, but also whether the known evidence would
> lead a reasonable attorney to investigate further." *Wiggins*,
> 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a

frivolous claim).

Boobyyaa must prove that the state court's decision was "(1) . . . contrary to,

or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States or (2) . . . based on an

unreasonable determination of the facts in light of the evidence presented in the State

court proceeding."  28 U.S.C. § 2254(d).  Sustaining a claim of ineffective assistance

of counsel is very difficult because "[t]he standards created by *Strickland* and

§ 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The state post-conviction court determined that Boobyyaa failed to meet his burden under *Strickland* to prove his counsel rendered ineffective assistance. Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Boobyyaa cannot meet the "contrary to" test in Section 2254(d)(1). Boobyyaa instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

## IV.  GROUNDS FOR RELIEF

This order addresses Boobyyaa's nine grounds of ineffective assistance of counsel in a more cohesive manner than sequentially by re-organizing the grounds into the following three groups.  Grounds one, two, six, and eight each challenge the validity of the initial stop, search, and arrest, which led to the probation revocation.  Grounds three, four, seven, and nine challenge the revocation proceeding.  Lastly, ground five challenges the validity of his consecutive sentences.  The presumption of correctness and the highly deferential standard of review require that the analysis of each ground begin with the state court's analysis.

## A.  STOP, SEARCH, AND ARREST

### 1.  Ground Six

Boobyyaa alleges that counsel rendered ineffective assistance by not moving to suppress the telephone call reporting a suspicious person.  The post-conviction court summarily denied this claim with the following analysis (Respondent's Exhibit 27 at 99–100) (references to record and exhibits omitted):

> In claim six, Defendant alleges ineffective assistance of counsel when counsel allowed Defendant's probation to be violated based upon an illegal stop. Specifically, Defendant alleges counsel was ineffective for not suppressing the phone call of a suspicious person that Officer Yost used to unlawfully stop Defendant without probable cause. Defendant alleges on May 5, 2007, Officer Yost stated he received a phone call of a suspicious person. Defendant alleges Officer Yost used said information to unlawfully stop Defendant without probable cause. However, Defendant alleges [that on] cross-examination [during the revocation hearing] Officer Yost testified he had received a phone call of a suspicious person at the Safari Inn Hotel without a specific description of such person. Defendant alleges this suspicious person could have been anyone other

than Defendant on May 5, 2007. Defendant further alleges because Officer Yost did not have a specific description of the suspicious person phone call, Officer Yost unlawfully stopped Defendant without probable cause.

Moreover, Defendant alleges if counsel would have filed a proper motion to suppress the phone call, the outcome of Defendant's revocation hearing would have been different. However, Defendant alleges due to counsel's deficient conduct, the State was allowed to use an unlawful stop to justify a violation of probation. Lastly, he alleges he advised his counsel about the unlawful stop as a result of the suspicious person phone call, but counsel did not care to file any motions to suppress the suspicious phone call Officer Yost used to justify his unlawful stop and illegal arrest of Defendant.

After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient. However, the Court finds Defendant does not have standing to suppress a phone call he did not make or receive. *Cf Hodge v. State*, 629 So. 2d 973, 974 (Fla. 5th DCA 1993) (finding "Hodge had no expectation of privacy in the contents of his co-defendant's purse and, therefore, had no standing to raise her constitutional challenge to suppress the evidence against him"). Therefore, Defendant failed to demonstrate that counsel acted deficiently in failing to move for suppression of the phone call when Defendant did not have standing to seek suppression of the phone call. As such, no relief is warranted upon claim six.

In his Section 2254 application Boobyyaa argues that counsel should have attempted to identify and interview the person who reported the "suspicious person." Boobyyaa presents no argument to overcome the post-conviction court's determination that under state law Boobyyaa had no "standing to suppress a phone call he did not make or receive." As a consequence, Boobyyaa fails to meet his burden of showing that the state court's rejection of this claim of ineffective assistance of counsel is an unreasonable application of *Strickland*.

## 2. Ground One (First Sub-Part)

Although not alleged separately, Boobyyaa asserts two claims in ground one.

Boobyyaa alleges that counsel rendered ineffective assistance by not challenging the

validity of his arrest because (1) neither officer had a specific description of the

"suspicious person" and (2) neither officer had probable cause to arrest him.  The

respondent argues that the first sub-part is unexhausted because, unlike in his federal

application, in the state proceedings Boobyyaa never supported ground one with an

allegation that "neither one of these law enforcement agents had a specific

description of the suspicious person that they was looking for . . . ."  (Doc. 1 at 18)

Although in the state proceedings the lack-of-a-specific-description allegation was

included in ground six — a ground that, as discussed above, alleged counsel's

deficient performance for not moving to suppress the "suspicious person" call — the

lack-of-a-specific-description allegation was not asserted in ground one, which alleged

counsel's deficient performance for not challenging the validity of the arrest.

(Respondent's Exhibits 24 at 25 (ground one) and 26 at 87 (ground six))  The post-

conviction court summarily denied ground six, and approximately six months later

the court denied ground one after considering the state's response and Boobyyaa's

reply.  The factual basis that Boobyyaa presented to the state court for ground one

asserts that the stop was "unlawful" and "illegal" but never asserts that the officers

lacked a specific description of the "suspicious person." The post-conviction court did

not interpret ground one to include the lack-of-a-specific-description allegation.

**(a) Exhaustion:**

An applicant must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971).  *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").  Also, a petitioner must present to the federal court the same claim presented to the state court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").  "Mere similarity of claims is insufficient to exhaust." *Duncan v. Henry*, 513 U.S. at 366.

Boobyyaa erred by not presenting the lack-of-a-specific-description allegation as part of ground one in the state proceedings.  "While we do not require a verbatim restatement of the claims brought in state court, we do require that a petitioner presented his claims to the state court 'such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.'"

*McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005) (quoting *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344–45 (11th Cir. 2004)), *cert. denied*, 547 U.S. 1073 (2006). *See also Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made."); *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1271, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983)[3] ("The exhaustion requirement is not satisfied if a petitioner presents new legal theories or entirely new factual claims in support of the writ before the federal court.").

## (b) Procedural Default:

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim.  A petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).  Boobyyaa's return to state court to present his unexhausted claim is not necessary, as *Snowden v. Singletary*, 135 F.3d 732, 736–37 (11th Cir.), *cert. denied*, 525 U.S. 963 (1998), explains:

---

[3] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

> [W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless "judicial ping-pong" and just treat those claims now barred by state law as no basis for federal habeas relief. . . . Federal courts may apply state rules about procedural bars to conclude that further attempts at exhaustion would be futile.

*Accord Kennedy v. Herring*, 54 F.3d 678, 684 (11th Cir. 1995) ("If a claim was never presented to the state courts, the federal court considering the petition may determine whether the petitioner has defaulted under state procedural rules."), *appeal after remand, Kennedy v. Hopper*, 156 F.3d 1143 (11th Cir.), *cert. denied sub nom Kennedy v. Haley*, 526 U.S. 1075 (1999). State time limitations bar Boobyyaa from presenting the lack-of-a-specific-description allegation as support for his claim that counsel rendered ineffective assistance by not challenging the validity of his arrest.

Because Boobyyaa procedurally defaulted his claim, review is foreclosed unless Boobyyaa can satisfy one of two tests. To overcome procedural default, Boobyyaa must establish either (1) both "cause for the default and prejudice attributable thereto" or (2) "that failure to consider [the defaulted] claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989).

To demonstrate "cause" for his procedural default, Boobyyaa must justify his failure to comply with Florida's procedural rules. In general, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded . . . efforts to comply with the state procedural rules." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). *See Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). Even if he shows cause for his

procedural default, Boobyyaa must show prejudice arising from the alleged constitutional error.  A petitioner must show that he suffered actual prejudice, "not merely that the errors of the trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis original).  *Accord Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991).  In essence, to show actual prejudice, Boobyyaa must demonstrate that counsel's error was so substantial that his resulting conviction or sentence violates due process.

As an alternative to showing "cause and prejudice," Boobyyaa must show that dismissal of his procedurally defaulted claim will result in a "fundamental miscarriage of justice."  Boobyyaa's ability to meet this standard is especially difficult here because he must demonstrate "actual innocence" of the crime of conviction.  *See Smith v. Murray*, 477 U.S. 527, 537 (1986) (citing *Murray v. Carrier*, 477 U.S. at 496).  *See also Engle v. Isacc*, 456 U.S. 107, 134–35 (1982), and *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause and holding that a petitioner must show "as a factual matter that he did not commit the crime of conviction.").  Additionally, to meet the "fundamental miscarriage of justice" exception, Boobyyaa must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Boobyyaa cannot meet the "fundamental miscarriage

of justice" exception because he presents no "new reliable evidence" that he is actually innocent.

**(c) Conclusion:**

Boobyyaa failed to fairly present the state court with the factual basis of his lack-of-a-specific-description claim as asserted in the first sub-part of ground one. The claim is unexhausted and procedurally defaulted. Boobyyaa meets neither the "cause and prejudice" nor the "manifest injustice" to overcome the procedural default. As a consequence, the first sub-part of ground one is procedurally barred from federal review.

### 3. Ground One (Second Sub-Part)

Boobyyaa alleges that trial counsel rendered ineffective assistance by not challenging the validity of his arrest. The post-conviction court determined that an evidentiary hearing was unwarranted and denied this claim with the following analysis (Respondent's Exhibit 33 at 348–50) (references to record and exhibits omitted):

> In claim one, Defendant alleges ineffective assistance of counsel when counsel allowed Defendant's probation to be violated based upon an illegal arrest. Specifically, Defendant alleges on May 5, 2007, he was stopped, searched, and questioned for no reason by Hillsborough County Sheriff Deputy B. Williams at approximately 3:00 a.m. Defendant alleges after Deputy Williams learned Defendant did not possess any illegal contraband, Deputy Williams had completed his unlawful stop and was ready to release Defendant. However, Defendant alleges Tampa Police Officer Yost arrived stating he received a phone call of a suspicious person. Defendant alleges Officer Yost then searched him and did not discover any illegal contraband. Defendant further alleges after learning Defendant had car keys belonging to a vehicle, Officer Yost alleged that

Defendant had car keys that belonged to a stolen vehicle and used false information to illegally arrest and detain Defendant on May 5, 2007. Defendant alleges he was never charged with any stolen vehicle crime.

Defendant admits that at the . . . revocation hearing, his counsel objected to the illegal arrest and involuntary charge, but alleges he failed to argue the fact that Defendant had been unlawfully stopped, unlawfully searched, and arrested for an involuntary crime. Defendant alleges but for counsel's ineffectiveness, the outcome of Defendant's revocation hearing would have been different as his probation would have never been violated. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

In its response, the State, relying on *State v. Davis*, 932 So. 2d 1246 (Fla. 3d DCA 2006), asserts counsel is not required to file a useless or futile motion as counsel must have a good faith basis with which to file a motion. . . . The State, relying on page 9 of the [revocation hearing] transcript, further asserts there is no evidence the arrest [w]as illegal as Corporal Yost testified that Defendant was in possession of the keys to a stolen vehicle that was parked in the parking lot where Defendant was located.

Therefore, the State asserts the record reflects there was sufficient probable cause to arrest Defendant for theft and any search of Defendant was a valid search incident to arrest.

In his reply, Defendant asserts Defendant was never charged with the crime for the arrest to be valid. Therefore, Defendant asserts his prosecution for possession of paraphernalia must fail. After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court finds the State's response to be persuasive. The Court finds Corporal Mark Yost testified at the . . . violation of probation hearing as follows:

> YOST: Upon my arriving there a deputy was speaking with Mr. Boobyyaa in the parking lot. While this deputy was speaking with him I canvassed the nearby parking lot looking at cars and found a stolen vehicle that was parked in the lot. I went back to where the deputy was speaking to Mr. Boobyyaa which was a very short distance

> away and I ascertained that he had the keys to the
> stolen vehicle.
> . . . .
> I found the keys to the stolen vehicle in his pants
> pocket and he was placed under arrest.
>
> Therefore, the Court finds Corporal Yost had reasonable
> suspicion to search Defendant, and after finding the keys to the
> stolen vehicle, probable cause to arrest Defendant.
> Consequently, the Court finds a motion to suppress would not
> have been viable as Defendant's arrest was legal. In conclusion,
> the Court finds Defendant cannot demonstrate that counsel
> acted deficiently in allowing his Defendant's probation to be
> revoked when his violation was not based upon an illegal arrest.
> As such, no relief is warranted upon claim one.

In determining that counsel's performance was not deficient (for not

challenging the validity of his arrest) the post-conviction court accepted the officer's

testimony over that of Boobyyaa.  A federal court must defer to the state court's

findings of fact.  28 U.S.C. § 2254(e)(1).  This deference applies to credibility

determinations that resolve conflicting testimony, as *Baldwin v. Johnson*, 152 F.3d

1304, 1316 (11th Cir. 1998), cert. denied, 526 U.S. 1047 (1999), instructs:

> We must accept the state court's credibility determination and
> thus credit [the attorney's] testimony over [the petitioner's].
> *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying
> the statutory presumption of correctness under § 2254(d) to the
> state court's credibility determination), *cert. denied*, 516 U.S.
> 1122 (1996).

The deference is heightened when reviewing a credibility determination in a

Section 2254 application.  *Gore v. Sec'y, Dep't of Corr.*, 492 F. 3d 1273, 1300 (11th Cir.

2007), *cert. denied*, 552 U.S. 1190 (2008).  *Accord Kurtz v. Warden, Calhoun State Prison*,

541 Fed. App'x 927, 929 (11th Cir. 2013)[4] ("'A certain amount of deference is always given to a trial court's credibility determinations,' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*), *cert. denied sub nom. Kurtz v. Jeanes*, 134 S. Ct. 2728 (2014).

Additionally, the post-conviction court determined that counsel's performance was not deficient because the initial stop was lawful. Although he disagrees with the state court's legal determination, Boobyyaa fails to meet his burden of showing either that the state court's application of *Strickland* was unreasonable or that the determination of facts was unreasonable.

### 4. Ground Two

Boobyyaa alleges that trial counsel rendered ineffective assistance by not arguing that revocation of probation was improper because the drug paraphernalia (glass cocaine pipe) was obtained during an unlawful arrest. The post-conviction court determined that an evidentiary hearing was unwarranted and denied this claim with the following analysis (Respondent's Exhibit 33 at 351–53) (references to record and exhibits omitted):

> In claim two, Defendant alleges ineffective assistance of counsel when counsel allowed defendant's probation to be violated based upon inadmissible evidence obtained from an illegal arrest. Specifically, Defendant alleges on May 5, 2007, he was stopped, searched, and questioned for no reason by Hillsborough County Sheriff Deputy B. Williams at approximately 3:00 a.m. Defendant alleges after Deputy Williams learned Defendant did not possess any illegal contraband, Deputy Williams had completed his unlawful stop

---

[4] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

and was ready to release Defendant. However, Defendant alleges Tampa Police Officer Yost arrived stating he received a phone call of a suspicious person. Defendant alleges Officer Yost then searched him and did not discover any illegal contraband. Defendant further alleges after learning Defendant had car keys belonging to a vehicle, Officer Yost alleged that Defendant had car keys that belonged to a stolen vehicle and used false information to illegally arrest and detain Defendant on May 5, 2007.

Moreover, Defendant alleges Officer Yost placed him in the back seat of his patrol car, and after five minutes, ordered Defendant to step out of his patrol car. Defendant alleges Officer Yost then went inside the back seat of his patrol car and lifted the whole entire back seat of his patrol car completely up, went underneath the back seat of his patrol car, and removed glass paraphernalia out from underneath the back seat of his patrol car. Defendant alleges Officer Yost charged him with possession of paraphernalia. However, Defendant alleges he never possessed said paraphernalia during the unlawful stop. Therefore, Defendant alleges Officer Yost not only used a false information charge to obtain Defendant's illegal arrest, he also used an involuntary charge of possession of paraphernalia to violate Defendant's probation.

Additionally, Defendant alleges he advised his counsel about the inadmissible evidence, but counsel refused to make said argument to the Court. Defendant further alleges if counsel would not have allowed the State to use this inadmissible evidence to violate Defendant's probation, the outcome of Defendant's revocation hearing would have been different as his probation would have never been violated. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

In its response, the State, relying on *State v. Davis*, 932 So. 2d 1246 (Fla. 3d DCA 2006), asserts counsel is not required to file a useless or futile motion as counsel must have a good faith basis with which to file a motion. The State, relying on *Gettel v. State*, 449 So. 2d 413 (Fla. 2d DCA 1984 ), asserts where suppression of the evidence was not required and a motion to suppress would not have properly been granted, there was no prejudice to the defendant in failing to file such a motion. Specifically, the State, relying on page 14 of the . . . violation of probation hearing transcript, asserts the sworn testimony provided by the investigating officer conclusively demonstrates

there was no viable motion to suppress the paraphernalia that was found in the backseat of the police car when Defendant was the only occupant. The State, relying on page 9 of the [revocation hearing] transcript, further asserts there is no evidence the arrest as illegal as Corporal Yost testified that Defendant was in possession of the keys to a stolen vehicle that was parked in the parking lot where Defendant was located.

Therefore, the State asserts the record reflects there was sufficient probable cause to arrest Defendant for theft and any search of Defendant was a valid search incident to arrest. The State further asserts Defendant has no privacy interest in the back seat of a police car where the paraphernalia was found. Therefore, the State asserts counsel would have no good faith basis to move to suppress the crack pipe that was recovered from the police car. The State, relying on *Wells v. State*, 598 So. 2d 259 (Fla. 1st DCA 1992), also asserts claims that evidence was obtained in violation of fourth amendment protection against illegal search and seizure must be raised on direct appeal. Lastly, the State asserts because the files and records in this case conclusively demonstrate that Defendant is not entitled to relief and his claim is procedurally barred, this claim should be summarily denied.

In his reply, Defendant asserts the State totally ignored the fact that claim two is different from claim one. After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court finds the State's response to be persuasive. The Court finds Corporal Mark Yost testified at the . . . violation of probation hearing as follows:

> YOST: Upon my arriving there a deputy was speaking with Mr. Boobyyaa in the parking lot. While this deputy was speaking with him I canvassed the nearby parking lot looking at cars and found a stolen vehicle that was parked in the lot. I went back to where the deputy was speaking to Mr. Boobyyaa which was a very short distance away and I ascertained that he had the keys to the stolen vehicle.
> . . . .
> I found the keys to the stolen vehicle in his pants pocket and he was placed under arrest.

Therefore, the Court finds Corporal Yost had reasonable suspicion to search Defendant, and after finding the keys to the

> stolen vehicle, probable cause to arrest Defendant.
> Consequently, the Court finds Defendant cannot demonstrate
> that counsel acted deficiently in allowing his Defendant's
> probation to be revoked when his violation was not based upon
> an illegal arrest and the evidence was admissible. As such, no
> relief is warranted upon claim two.

In determining that counsel's performance was not deficient (for not arguing that revocation was improper because the drug paraphernalia was obtained during an unlawful arrest) the post-conviction court accepted the officer's testimony over that of Boobyyaa. As discussed above, the state court's credibility determination is entitled to deference. Additionally, the post-conviction court determined that counsel's performance was not deficient because the arrest was lawful. Although he disagrees with the state court's legal determination, Boobyyaa fails to meet his burden of showing either that the state court's application of *Strickland* was unreasonable or that the state court's determination of facts was unreasonable.

## 5. Ground Eight

Boobyyaa alleges that trial counsel rendered ineffective assistance by not arguing the revocation was improper because the state used the "illegal" charge of possession of drug paraphernalia as a basis to revoke probation but then dismissed the possession charge. The post-conviction court determined that an evidentiary hearing was unwarranted and denied this claim with the following analysis (Respondent's Exhibit 33 at 359–62) (references to record and exhibits omitted):

> In claim eight, Defendant alleges ineffective assistance of
> counsel when counsel allowed the State to use an illegal charge
> to violate Defendant's probation and allowed the State to
> dismiss the illegal charge after Defendant's probation was

- 24 -

violated solely . . . based on the new substantive charge. Specifically, Defendant alleges on May 5, 2007, he was arrested for possession of drug paraphernalia. Defendant alleged on May 11, 2007, an affidavit was filed alleging Defendant violated his probation on counts one and three. Defendant alleges [that at the revocation hearing] counsel allowed the State to use the illegal possession of drug paraphernalia charge to violate Defendant's probation.

Moreover, Defendant alleges after the Court found Defendant guilty of violating his probation based on the possession of drug paraphernalia charge, counsel allowed the State to *nolle prosequi* the substantive possession of drug paraphernalia charge . . . and the Court to impose consecutive sentences on counts one and three in [the original criminal case]. Defendant further alleges had counsel not acted deficiently, the outcome of the probation hearing would have been different. Lastly, Defendant alleges he informed his counsel of said error, but his counsel failed to attack said error. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

In its response, the State asserts counsel had no basis to make the alleged objection and, therefore, cannot be found to be deficient. Specifically, the State asserts there is no requirement that a Court first make a finding of guilt on a given set of facts from another criminal case before using or applying those facts to a violation of probation hearing in a pending case. The State, relying on *Lambert v. State*, 545 So. 2d 838 (Fla. 1989), asserts it is an established principle of law in Florida that a trial judge in a probation violation hearing may use evidence of criminal conduct separate from a criminal conviction to establish a violation of probation. The State, relying on *Maselli v. State*, 446 So. 2d 1 079 (Fla. 1984), asserts it is not necessary that there b[e] a conviction of any unlawful act.

Moreover, the State asserts due process rights are more limited for probationers than for an individual initially charged with a criminal offense and proof sufficient to support a criminal conviction is not required to support a judge's discretionary order revoking probation. The State, relying on *Russ v. State*, 313 So. 2d 758 (Fla. 1975), asserts the ultimate facts necessary to convict for a criminal offense and the ultimate facts necessary to establish a violation of probation are not the same. Therefore, the State asserts there is no requirement that the Court first obtain a conviction on a given set of facts of allegedly new

criminal conduct before it can proceed on a revocation where those new facts are presented.

Additionally, the State asserts the fact that the State Attorney chose to later drop the case involving the new criminal conduct has no bearing or effect whatsoever on the validity of the revocation proceeding. Therefore, the State asserts counsel had no basis to object as Defendant has not demonstrated any deficient performance of counsel. Consequently, the State asserts this claim should be summarily denied.

In his reply, Defendant asserts the State's argument is procedurally barred and is insufficient to warrant a violation of probation conviction. Defendant, relying on *Graddy v. State*, 517 So. 2d 772 (Fla. 2d DCA 1998), asserts revocation of probation is improper if based on the commission of a new charge that is subsequently dismissed.

After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court finds with respect to Defendant's allegation that counsel allowed the State to use an illegal charge to violate Defendant's probation, the Court finds Corporal Yost had reasonable suspicion to search Defendant, and after finding the keys to the stolen vehicle, probable cause to arrest Defendant. Consequently, the Court finds Defendant's arrest was legal. The Court further finds "when a probationer is before the court accused of violating probation by committing an unlawful act, the judge may revoke probation upon finding that such unlawful act was committed by the probationer; it is not necessary that there be a conviction of the unlawful act." *Maselli*, 446 So. 2d at 1080. Therefore, the Court finds Defendant cannot demonstrate that counsel acted deficiently when the State did not use an illegal charge to violate Defendant's probation. As such, no relief is warranted upon this portion of claim eight.

With respect to Defendant's allegation that counsel allowed the State to dismiss the illegal charge after Defendant's probation was violated solely . . . based on the new substantive charge, the Court finds "when a probationer is before the court accused of violating probation by committing an unlawful act, the judge may revoke probation upon finding that such unlawful act was committed by the probationer; it is not necessary that there be a conviction of the unlawful act." *Maselli*, 446 So. 2d at 1080. The Court further finds based on Defendant's assertions, the State did not move to dismiss the

substantive possession of drug paraphernalia charge until after the Court used Defendant's arrest on the possession of drug paraphernalia charge to find Defendant guilty of violating his probation in [the original criminal case]. Therefore, the Court finds Defendant cannot demonstrate counsel acted deficiently when counsel could not foresee that the State was going to dismiss the possession of drug paraphernalia charge after Defendant's probation was violated based on his arrest for possession of drug paraphernalia. Lastly, the Court finds it was not necessary that Defendant be convicted of possession of drug paraphernalia to sustain the Court's revocation of probation in [the original criminal case]. As such, no relief is warranted upon this portion of claim eight.

As *Swilley v. State*, 781 So. 2d 458, 460–61 (2DCA 2001), explains, the post-conviction court properly rejected Boobyyaa's relying on *Graddy* for the proposition that revoking parole based on charges that are later dismissed is improper:

> Swilley asserts that the trial court could not find a substantive violation because the State *nolle prossed* the new charges. We disagree. The filing of a *nolle prosequi* does not mean that the trial court cannot find that Swilley substantively violated his community control by committing new offenses. *Cf. State v. Tuthill*, 545 So. 2d 850, 851 (Fla. 1989) (holding that a new criminal offense can constitute a substantive violation of probation for purposes of imposing a guidelines departure sentence even if the State files a *nolle prosequi*); *State v. Jenkins*, 762 So. 2d 535, 536 (Fla. 4th DCA 2000) (holding that a new criminal offense can constitute a probation violation even if *nolle prossed* by the State . . . .

Moreover, *Graddy* is limited to its unique circumstance, specifically, "that *Graddy* is distinguishable because of the [state's] concession of error." *State v. Jenkins*, 762 So. 2d 535, 536 (4DCA 2000).

To prevail on his claim of ineffective assistance of counsel in ground eight — that the revocation was improper because the state dismissed the charge of possession of drug paraphernalia — Boobyyaa must prove (1) that the arrest was unlawful,

(2) that the dismissal of the drug paraphernalia charge precludes revoking parole based on the possession of drug paraphernalia, (3) that counsel's failure to contest the state's reliance on the drug paraphernalia charge was deficient performance, (4) that counsel's deficient performance was prejudicial, and (5) that the state court's determination that counsel did not provide ineffective assistance was unreasonable. Boobyyaa cannot meet his burden on any of these requirements.  Although he disagrees with the state court's legal determination, Boobyyaa fails to meet his burden of showing either that the state court's application of *Strickland* was unreasonable or that the state court's determination of facts was unreasonable.

## B.  THE REVOCATION PROCEEDING

### 1.  Ground Three

Boobyyaa alleges that trial counsel rendered ineffective assistance by not requiring the state to follow the state judge's order to test the drug paraphernalia for Boobyyaa's fingerprints.  The post-conviction court afforded Boobyyaa an evidentiary hearing and denied this claim with the following analysis (Respondent's Exhibit 38 at 506–11) (references to record and exhibits omitted):

> In claim three, Defendant alleges ineffective assistance of counsel due to counsel's failure to argue and force the Court to compel the State to follow the judge's order to have fingerprint testing conducted on the paraphernalia to determine the physical evidence. Specifically, Defendant alleges [that] Defendant motioned the Court to rule on his oral motion to have the paraphernalia submitted for fingerprints to determine the evidence. Defendant alleges Judge Ficarrotta granted his oral motion for the evidence to be tested for fingerprints, but the State refused to obey the judge's order. Defendant admits that at the . . . revocation hearing, his counsel advised the Court that

the paraphernalia was never tested for fingerprints as ordered by Judge Ficarrotta . . . . However, Defendant alleges Judge Perry and the State ignored said facts and Judge Ficarrotta's order.

Defendant alleges his counsel could have done more to compel the State to have the paraphernalia tested for fingerprints in compliance with Judge Ficarrotta's . . . order. Defendant alleges counsel's deficient conduct deprived the Court of available sufficient evidence which could have resulted in Defendant being found not guilty of violating his probation. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient. The Court further finds at the conclusion of the probation violation hearing, Defendant's counsel stated, "I would argue, Judge, as Mr. Boobyyaa has indicated there ha[s] been no fingerprint testimony presented in this case. Certainly it is a glass pipe that should have been at least examined and determined whether or not any fingerprints were on the pipe."

In its response, the State, relying on page 18 of the [revocation hearing] transcript, asserts the record does demonstrate that in his closing argument on cross-examination, counsel did argue the failure to present fingerprint testimony should lead the Court to find Defendant not guilty based on insufficient evidence. Therefore, the State asserts counsel made the argument that there was no evidence present of Defendant's fingerprints on the paraphernalia. Consequently, the State asserts this claim should be denied.

In his reply, Defendant asserts the State's response to claim three is insufficient. After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court found Defendant's counsel Mr. Hernandez argued the following at the [revocation] hearing:

> HERNANDEZ: I would argue, Judge, as Mr. Boobyyaa has indicated there ha[s] been no fingerprint testimony presented in this case. Certainly it is a glass pipe that should have been at least examined and determined whether or not any fingerprints were on the pipe. We would ask the Court to find Mr. Boobyyaa not guilty based on insufficient evidence.

However, the Court found the fact that Mr. Hernandez made the aforementioned argument does not conclusively refute

Defendant's allegations that Mr. Hernandez was ineffective for
failing to argue and force the Court to compel the State to
follow the judge's order to have fingerprint testing conducted on
the paraphernalia to determine the physical evidence.
Therefore, the Court granted an evidentiary hearing on claim
three.

At the . . . evidentiary hearing, Defendant testified at a
[pre-trial] hearing before Judge Ficarrotta, he asked the judge if
he could have the paraphernalia tested for fingerprints and the
judge granted his oral motion. He admitted he wanted it to be
proven at his violation of probation hearing that there were no
fingerprints on the paraphernalia. He testified "I never knowed
about the paraphernalia being tested till like four years later."
He further testified, "I just got that report last year. I never
knowed about the paraphernalia being tested anything. I just
obtained that document last year." When asked if the results
were admitted into evidence at his . . . violation of probation
hearing, he responded, "No."

He testified his counsel Danny Hernandez did not have the test
results at the violation of probation hearing and did not ask for
a continuance. He admitted that Mr. Hernandez did mention in
the violation of probation hearing that there was no fingerprint
testimony presented in his case. He testified "My position was
for him, for Danny Hernandez to do his job as my attorney and
to preserve material evidence for my defense and he didn't do
that."

He admitted that his counsel argued at the violation of
probation hearing that the glass pipe should have been
examined and determined whether or not there were
fingerprints on the pipe. He testified the result of his violation of
probation hearing might have been different if the test results
were presented.

On cross-examination, Defendant admitted to having some
prior felony convictions. He admitted the results stated that no
lifts were able to be taken, meaning there were no fingerprints
found on it or that could be tested. He testified Mr. Hernandez
should have had the pipe tested himself.

At the same hearing, Mr. Daniel Hernandez admitted he
represented Defendant at [the] violation of probation hearing.
He admitted that Judge Ficarrotta ordered the paraphernalia to

be tested for fingerprints. However, he did not recall if such was done prior to the hearing.

After looking at the test results, he admitted that there was an examination, but there was nothing of comparison value. He did not recall getting a copy of the report prior to the hearing. When asked if he brought it to the Court's attention that he did not have the report at the time of the hearing, he responded, "No. I read the transcript and I don't recall reading that. So I think it's a fair assumption that I didn't — I was not aware that the document existed or the examination had taken place, because I don't see anything in the transcript that acknowledges that . . . or makes any reference of that." He testified he could not say for sure if he requested a continuance or not, but he did not have any notations that he asked for a continuance.

When asked if he thought it was important to have the State's compliance with the Court order prior to proceeding with the violation of probation hearing, he responded as follows:

> HERNANDEZ: I'm not sure exactly what my thoughts were at the time. I think that probably the results speak for themselves that if you have a test that has his fingerprints, obviously that would be very, very unfavorable for his case. What often happens in these types of cases, just like it happened here, is that when you have some type of a piece of a glass pipe, there are not prints to be lifted. I think that that report indicates that there are no prints to be lifted. Does not mean he's — his prints were not on it or were on it. So I'm not sure if at the time I thought it was that crucial to move forward. But I can't speak for what I was thinking back in 2007.

When asked if he thought that it would have changed the outcome, he responded, "No" and further elaborated as follows:

> HERNANDEZ: . . . Because obviously, somebody handled that glass pipe. Whoever put it there — whoever, at some point that glass pipe was handled. The fact that there were no prints lifted from the pipe would indicate that just what a fingerprint expert would testify to, which I've cross-examined hundreds of fingerprint experts

that would say that you can touch these things
and it's not going to many times leave a print. So
what we have is really a situation where I don't
think it was favorable or unfavorable for Mr.
Boobyyaa, because in fact, we know that at some
point, somebody handles the glass pipe, but there
were no prints to be lifted. So in fact it doesn't —
it's not incriminating against Mr. Boobyyaa, but
it's not exonerating either.

He admitted he did not recall objecting to the admission of the
pipe into evidence.

On cross-examination, he admitted the fact that there were no
ascertainable fingerprints on the pipe would go to weight, not
admissibility of the pipe into evidence. He admitted that just
because there are not fingerprints, does not mean the evidence
is not admitted. On redirect examination, he testified the fact
that no fingerprints were lifted of comparison value does not
help or hurt Defendant.

After reviewing the allegations, the testimony, evidence, and
arguments presented at the . . . evidentiary hearings, the court
file, and the record, the Court finds the results of the fingerprint
test revealed that there were [no] fingerprints of comparison on
the pipe. The Court finds the fact that there were no fingerprints
of comparison on the pipe does not prove that Defendant did or
did not handle the pipe, as such results are neither incriminating
nor exonerating. Consequently, the Court finds Defendant
cannot demonstrate prejudice as a result of Mr. Hernandez's
failure to argue and force the Court to compel the State to
follow the judge's order to have fingerprint testing conducted on
the paraphernalia to determine the physical evidence when the
results of the testing are not exonerating. As such, no relief is
warranted upon the allegations in claim three.

Assuming both that the state failed to comply with the pre-trial order to test

the glass pipe for fingerprints and that trial counsel should have required the testing

before the revocation hearing, Boobyyaa nevertheless cannot show that he was

prejudiced because, when the pipe was tested, the results were neither inculpatory nor

exculpatory.  The results of the fingerprint tests were inconsequential to the outcome

of the revocation hearing.  Although he disagrees with the state court's legal

determination, Boobyyaa fails to meet his burden of showing either that the state

court's application of *Strickland* was unreasonable or that the state court's

determination of facts was unreasonable.

## 2.  Ground Four

Boobyyaa alleges that trial counsel rendered ineffective assistance by not

subpoenaing certain witnesses to testify at the revocation hearing, specifically, the

person who reported the "suspicious person," the fingerprint technicians, Tampa

Police Department Corporal Yost, and Hillsborough County Deputy Sheriff

Williams.  As discussed above, the post-conviction court determined that Boobyyaa

could not challenge the "suspicious person" call (ground six)[5] and that the results

from the fingerprint tests were inconsequential (ground three).[6]  The post-conviction

court addressed Boobyyaa's claim that counsel rendered ineffective assistance by not

presenting Corporal Yost and Deputy Williams at the revocation hearing.

## (a) Corporal Yost:

Boobyyaa alleges that trial counsel rendered ineffective assistance by not

subpoenaing Corporal Yost to testify at the revocation hearing.  The post-conviction

---

[5]  The respondent correctly argues that the testimony by the caller "would be irrelevant" and would have no effect on the outcome of the revocation hearing because "the pertinent question is whether the officers had reasonable suspicion to stop petitioner, not whether petitioner was in fact the person the caller had been referring to." (Respondent's Exhibit 7 at 15)

[6]  The respondent correctly argues that the fingerprint technicians not testifying is a claim that was not presented in the post-conviction petition and, as a consequence, is unexhausted. Nevertheless, the claim lacks merit because Boobyyaa cannot show that the absence of testimony by the fingerprint technicians was prejudicial.

court determined that an evidentiary hearing was unwarranted and denied this claim

with the following analysis (Respondent's Exhibit 33 at 355–57) (references to record

and exhibits omitted):

> In claim four, Defendant alleges ineffective assistance of
> counsel due to counsel's failure to subpoena key witnesses to
> testify at Defendant's revocation hearing. Specifically,
> Defendant alleges [during pre-trial] he filed a *pro se* motion for
> all witnesses involving the new law violation of probation to be
> subpoenaed for Court to appear at the revocation hearing.
> However, Defendant alleges the State and Court ignored
> Defendant's *pro se* motion. Defendant alleges Deputy B.
> Williams and Officer Yost should have been subpoenaed for
> Defendant's . . . revocation hearing. However, Defendant
> alleges due to counsel's deficient conduct, only Officer Yost
> appeared at the . . . revocation hearing. Lastly, Defendant
> alleges if Deputy B. Williams would have testified at the
> revocation hearing, the outcome would have been different
> because Deputy B. Williams searched Defendant and found
> Defendant did not possess any illegal contraband. After
> reviewing the allegations, the court file, and the record, the
> Court finds Defendant's allegations are facially sufficient.
>
> In its response, the State asserts Corporal Yost did testify at
> Defendant's violation of probation hearing on behalf of the
> State and was cross-examined by Defendant's counsel.
> Therefore, the State asserts Defendant cannot demonstrate that
> he was prejudiced when Corporal Yost testified and was subject
> to cross-examination at the violation of probation hearing.  . . .
>
> . . . .
>
> After reviewing the allegations, the State's response,
> Defendant's reply, the court file, and the record, the Court finds
> with respect to Corporal Yost, Defendant cannot demonstrate
> prejudice based on the fact that Corporal Yost testified at his
> violation of probation hearing and was subject to cross-
> examination by Defendant's counsel. As such, no relief is
> warranted upon this portion of claim four.

The record supports the post-conviction court's determination that Corporal

Yost testified at the revocation hearing.  (Respondent's Exhibit 6 at 123–30)  As a

consequence, the record refutes Boobyyaa's allegation of ineffective assistance of

counsel.

**(b) Deputy Williams:**

Boobyyaa alleges that trial counsel rendered ineffective assistance by not

subpoenaing Deputy Williams to testify at the revocation hearing.  The post-

conviction court afforded Boobyyaa an evidentiary hearing[7] and denied this claim

with the following analysis (Respondent's Exhibit 38 at 511–14) (references to record

and exhibits omitted):

> In claim four, Defendant alleges ineffective assistance of
> counsel due to counsel's failure to subpoena Deputy B.
> Williams to testify at Defendant's revocation hearing.
> Specifically, Defendant alleges [ before trial] he filed a *pro se*
> motion for all witnesses involving the new law violation of
> probation to be subpoenaed for Court to appear at the
> revocation hearing. However, Defendant alleges the State and
> Court ignored Defendant's *pro se* motion. Defendant alleges
> Deputy B. Williams should have been subpoenaed for
> Defendant's . . . revocation hearing. However, Defendant
> alleges due to counsel's deficient conduct, only Officer Yost
> appeared at the . . . revocation hearing. Lastly, Defendant
> alleges if Deputy B. Williams would have testified at the
> revocation hearing, the outcome would have been different
> because Deputy B. Williams searched Defendant and found
> Defendant did not possess any illegal contraband. After
> reviewing the allegations, the court file, and the record, the
> Court finds Defendant's allegations are facially sufficient.
>
> In its response, the State asserts Defendant failed to allege
> Deputy Williams was available to testify and, therefore, has
> failed to establish the prejudice prong. In his timely "motion for

---

[7] The post-conviction court conducted an evidentiary hearing at which testimony was
presented for ground three (the failure to test the glass pipe for fingerprints) but because counsel
could not locate Deputy Williams, a second evidentiary hearing was scheduled for six months later.
Deputy Williams never testified because appointed post-conviction counsel still could not locate the
witness.

leave to amend pending motion for post conviction relief," Defendant asserts Deputy Williams would have offered testimony that he searched Defendant before Officer Yost arrived and Defendant did not possess any drug paraphernalia during the search. Defendant alleges Deputy Williams was available to testify at the revocation hearing. In his reply, Defendant asserts the State's response is insufficient. [E]ven with the benefit of the State's response, the Court was unable to conclusively refute Defendant's allegations and granted an evidentiary hearing.

At the . . . evidentiary hearing, Defendant testified Deputy Williams would have testified that he did not have anything on him before being arrested and Officer Yost searched him. He testified although he asked his counsel to subpoena Deputy Williams for the hearing, he did not testify at the hearing.

At the same hearing, Mr. Hernandez testified that Deputy B. Williams did not testify at the violation of probation hearing. He testified he did not remember what Deputy Williams would have testified to. However, he acknowledged that if Deputy Williams testified that he did a thorough search of Defendant before he was placed in the patrol car, it would have helped Defendant and changed the outcome of the hearing. When asked why he did not subpoena Deputy Williams, he responded, "I don't remember. Normally, if I think that it's going to be helpful, I would. But I can't be more specific than that. I don't recall. I don't remember right now the circumstances of why Deputy Williams was not subpoenaed."

On cross-examination, he testified "I went through what I had. Unless I'm missing part of the discovery, I do not remember, or even seeing now, any evidence or any indication that Deputy Williams had conducted a thorough search of Mr. Boobyyaa." At the [evidentiary] hearing, the [revocation hearing] transcript was admitted into evidence as defense exhibit #1.

After reviewing the allegations, the testimony, evidence, and arguments presented at the . . . evidentiary hearings, the court file, and the record, the Court finds Deputy B. Williams did not testify at Defendant's revocation hearing. However, the Court finds Deputy B. Williams did not testify at the . . . evidentiary hearings. Therefore, the Court finds Defendant failed to present any admissible evidence to support his claim that Deputy Williams would have testified that he searched Defendant and did not find any illegal contraband. Consequently, the Court

finds Defendant cannot demonstrate prejudice as a result of Mr. Hernandez's failure to subpoena Deputy B. Williams to testify at Defendant's revocation hearing. As such, no relief is warranted upon this portion of claim four.

The post-conviction court rejected this claim of ineffective assistance of counsel based on Boobyyaa's inability to prove that counsel's alleged deficient performance was prejudicial. Specifically, Boobyyaa did not locate and present Deputy Williams to testify at an evidentiary hearing to support Boobyyaa's factual allegations. As a consequence, the claim lacks adequate factual support. Although he disagrees with the state court's legal determination,[8] Boobyyaa fails to meet his burden of showing either that the state court's application of *Strickland* was unreasonable or that the state court's determination of facts was unreasonable.

### 3. Ground Seven

Boobyyaa alleges that counsel rendered ineffective assistance by allowing the trial court to ignore his *pro se* motion for a speedy trial. The post-conviction court summarily denied this claim with the following analysis (Respondent's Exhibit 27 at 100–01) (references to record and exhibits omitted):

In claim seven, Defendant alleges ineffective assistance of counsel when counsel allowed the Court to ignore Defendant's

---

[8] Boobyyaa alleges that Deputy Williams was present at the second evidentiary hearing but was not allowed to testify. Boobyyaa alleges (1) that during the evidentiary hearing "this sheriff was present in Judge Sexton['s] courtroom, but Judge Sexton would not let this sheriff testify" and (2) that his appointed counsel at the evidentiary hearing "pretended as if she could not locate this Sheriff when all along this sheriff was sitting inside the courtroom on this day at this evidentiary hearing." (Doc. 1-1 at 10) The transcript of the hearing shows that Boobyyaa spoke freely with the post-conviction court about trial counsel's failure to call Deputy Williams, understood that post-conviction counsel represented that she could not locate Deputy Williams, never contended that Deputy Williams was present in the courtroom, and responded "No" when asked if he had any other questions. (Respondent's Exhibit 35 at 632–34)

*pro se* motion for speedy trial upon demand. Specifically, Defendant alleges on May 5, 2007, he was illegally arrested for a possession of drug paraphernalia. Defendant alleges on May 15, 2007, he filed a *pro se* motion for speedy trial upon demand for the possession of drug paraphernalia charge. Defendant alleges Judge Sleet granted Defendant's *pro se* motion for a speedy trial upon demand, but Judge Perry ignored Defendant's motion and refused to offer Defendant a speedy trial upon demand in violation of rule 3.191(p)(3).

Moreover, he alleges he advised his counsel about the motion for speedy trial upon demand that Judge Sleet granted, but his counsel ignored the motion. Defendant alleges as a result of counsel's deficient conduct, he was not granted a speedy trial upon demand. Defendant alleges but for counsel's deficient conduct, the result of his probation hearing would have been different.

After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegation are facially sufficient. However, "[t]he speedy trial rule is inapplicable to violations of probation." *Piz v. State*, 826 So. 2d 1063, 1063 (Fla. 2d DCA 2002). Therefore, Defendant failed to demonstrate that counsel acted deficiently in allowing the Court to ignore Defendant's *pro se* motion for speedy trial upon demand when the speedy trial rule is inapplicable to violations of probation. As such, no relief is warranted upon claim seven.

The post-conviction court applied state law to determine that trial counsel's performance was not deficient. Although Boobyyaa had a right to a speedy trial for the misdemeanor charge of possession of drug paraphernalia, that charge was dismissed. Consequently, no violation of a right to a speedy trial is possible. Under state law the right to a speedy trial is inapplicable to a proceeding to revoke probation. Consequently, Boobyyaa's *pro se* demand for a speedy trial was a nullity. Although he disagrees with the state court's legal determination, Boobyyaa fails to meet his burden of showing either that the state court's application of *Strickland* was unreasonable or that the state court's determination of facts was unreasonable.

## 4.  Ground Nine

Boobyyaa alleges that counsel rendered ineffective assistance by allowing the post-conviction court "to leave certain questions asked by the judge out of the revocation hearing transcripts" (Doc. 1-1 at 39), specifically, a question about the police officer having searched Boobyyaa before placing him in the patrol car.  The post-conviction court summarily denied this claim with the following analysis (Respondent's Exhibit 27 at 102–03) (references to record and exhibits omitted):

> In claim nine, Defendant alleges ineffective assistance of counsel when counsel allowed the Court to leave questions asked by the judge out of Defendant's revocation hearing transcript that was prepared by the court reporter. Specifically, Defendant alleges [that] during Defendant's revocation hearing, the judge asked the arresting officer if he searched Defendant personally before placing him in the back seat of his patrol car. Defendant alleges the arresting officer advised the judge that he did search Defendant by conducting a pat-down search. However, Defendant alleges when he received a copy of the . . . probation hearing transcript, this question by the judge and answer by the officer were not part of the transcript. Defendant alleges they appear to have been deleted or taken out of the transcript, thereby creating fundamental error. Lastly, Defendant alleges his counsel refused to file any motion to supplement the record after he was aware of the error, thereby violating Defendant's constitutional rights.

> After reviewing the allegations, the court file, and the record, the Court finds Defendant cannot demonstrate any deficient conduct on the part of his trial counsel, nor any prejudice to the outcome of his [revocation] hearing and the Court's finding that he violated his probation as a result of the alleged inaccuracy in the [revocation hearing] transcript. However, the Court finds Defendant's allegations appear to allege that his appellate counsel refused to file any motion to supplement the record after Defendant made him aware of the alleged inaccuracy in the [revocation hearing] transcript. Therefore, the Court finds Defendant's relief, if any, may be pursued via a petition alleging ineffective assistance of appellate counsel. As such, the Court dismisses claim nine without prejudice to any right Defendant

> may have to file a petition alleging ineffective assistance of
> appellate counsel pursuant to Florida Rule of Appellate
> Procedure 9.141(c).

As discussed above under ground one (first sub-part), *Henry*, 513 U.S. at 365, explains that a petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights" and *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995), explains that a petitioner must present each claim to the state courts in the procedurally correct manner. The post-conviction court dismissed ground nine without prejudice and advised Boobyyaa that he must present the claim in a petition under Rule 9.141(c), Florida Rules of Appellate Procedure, which is the proper way to assert a claim of ineffective assistance of appellate counsel. Boobyyaa never followed the post-conviction court's advice and he asserts no justification for not following the court's advice. Consequently, the claim is both unexhausted and procedurally defaulted, and Boobyyaa meets neither the "cause and prejudice" nor the "manifest injustice" to overcome the procedural default. Ground nine is procedurally barred from federal review.

## C.  CONSECUTIVE SENTENCES

### Ground Five

Boobyyaa alleges that trial counsel rendered ineffective assistance by not challenging the imposition of consecutive sentences when the two charges from the original criminal proceeding — burglary of a dwelling and dealing in stolen property — arose from the same criminal episode. Boobyyaa contends that the

consecutive sentence is double jeopardy.  The post-conviction court determined that

an evidentiary hearing was unwarranted and denied this claim with the following

analysis (Respondent's Exhibit 33 at 357–59) (references to record and exhibits

omitted):

> In claim five, Defendant alleges ineffective assistance of counsel when counsel allowed the Court to impose a consecutive sentence when the crimes were part of the same criminal episode. Specifically, Defendant alleges [that he] pleaded guilty pursuant to a negotiated plea agreement to burglary of a dwelling (count one) and dealing in stolen property (count three). Defendant alleges the Court placed him on three (3) years' probation on counts one and three, with both counts to run concurrently. Defendant alleges [that] a violation of probation affidavit was filed alleging Defendant violated his three (3) years' probation on counts one and three by committing the new law offense of possession of drug paraphernalia . . . . However, Defendant alleges the [separate] misdemeanor possession of drug paraphernalia [charge] was subsequently dismissed.
>
> However, Defendant alleges his original burglary of a dwelling (count one) and dealing in stolen property (count three) occurred within the same criminal episode. Defendant alleges [that at the revocation hearing he] was found guilty of violating his probation on counts one and three. Defendant further alleges the Court revoked Defendant's probation on counts one and three, and sentenced Defendant to fifteen years' prison on counts one and three, with count three to run consecutive to count one. Defendant, relying on *Hayes v. State*, 803 So. 2d 695, 704 (Fla. 2001), alleges because the offenses in counts one and three occurred within the same criminal episode, double jeopardy bars the Court from sentencing Defendant to consecutive sentences. Defendant further alleges he advised his counsel of said error, but his counsel ignored the fact that the sentence was illegal. Lastly, Defendant alleges but for counsel's deficient conduct, Defendant would not be serving consecutive sentences. After reviewing the allegations, the court file, and the record, the Court finds Defendant's allegations are facially sufficient.

In its response, the State asserts *Hayes* states, "the common law 'single transaction' rule has been legislatively overruled; therefore, if the Legislature intended separate convictions and sentences for a defendant's single criminal act, there is no double jeopardy violation for the multiple punishments." The State relying on *Morejon v. State*, 394 So. 2d 1100 (Fla. 3d DCA 1981) and *Harris v. State*, 771 So. 2d 565 (Fla. 5th DCA 2000), asserts a court can impose consecutive sentences upon a revocation of probation even when a defendant was originally sentence[d] concurrently. Therefore, the State asserts counsel was not deficient in failing to object to Defendant's sentence and claim five should be denied.

In his reply, Defendant asserts *Hayes* prohibits the imposition of consecutive sentences by the Court for a single course of conduct. He further asserts it was fundamental error for the Court to impose consecutive sentences upon revocation of probation when he was originally sentenced to concurrent sentences.

After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court finds "[w]here a guilty plea is bargained for, double jeopardy claims as to the conviction and sentence are waived." *Blair v. State*, 805 So. 2d 873, 878 (Fla. 2d DCA 2001); citing *Novaton v. State*, 634 So. 2d 607, 609 (Fla. 1994) (holding a defendant's acceptance of sentencing pursuant to a negotiated, bargained for plea agreement waives any double jeopardy violations). A review of the record reflects that Defendant's . . . plea [in the original criminal proceeding] was entered pursuant to a negotiated, bargained for plea agreement which waived any potential double jeopardy violations. The Court further finds section 921.16(1), Florida Statute[,] allows the Court discretion to order the sentences be served consecutively. *Harris*, 771 So. 2d at 567. Therefore, the Court finds Defendant cannot demonstrate that counsel acted deficiently when section 921.16(1), Florida Statutes[,] allows the Court to impose a consecutive sentence when the crimes were part of the same criminal episode. As such, no relief is warranted upon clam five.

The two criminal offenses (burglary and dealing stolen property) are not the "same offense" within the meaning of the Double Jeopardy Clause because each requires proof of a different element. *Blockburger v. United States*, 284 U.S. 299

(1932).  If legislatively authorized, a consecutive sentence for each separate offense is

permitted even if the offense arises from the same criminal episode.  *See Whalen v.*

*United States*, 445 U.S. 684, 691–92 (1980).  *See also United States v. Clemendor*,

237 Fed. App'x 473, 478 (11th Cir. 2007) ("[T]he Double Jeopardy Clause is not

implicated when Congress imposes cumulative or multiple penalties.").  The

post-conviction court determined that, as a matter of state law, a sentencing judge

has the discretion to impose consecutive sentences.  Although he disagrees with the

state court's legal determination,[9] Boobyyaa fails to meet his burden of showing

either that the state court's application of *Strickland* was unreasonable or that the state

court's determination of facts was unreasonable.

## V.  CONCLUSION

To summarize, Boobyyaa fails to meet his burden to show that the state court's

decision was either an unreasonable application of controlling Supreme Court

precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 134 S. Ct. 10,

15–16 (2013), recognizes, this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to
> adjudicate claims of constitutional wrong, AEDPA erects a
> formidable barrier to federal habeas relief for prisoners whose
> claims have been adjudicated in state court. AEDPA requires
> "a state prisoner [to] show that the state court's ruling on the

---

[9]  The state court judge who revoked Boobyyaa's probation and sentenced him to consecutive terms of fifteen years' imprisonment was not the same judge who had accepted the guilty plea and imposed three years' probation. In his federal application Boobyyaa contends that the judge who imposed the consecutive sentences had no authority over the case because the first judge had no right to transfer the case.  Boobyyaa reveals no authority for this contention.  Moreover, Boobyyaa never presented this contention to the state courts.  Consequently, the contention is unexhausted and entitled to no federal review.

claim being presented in federal court was so lacking in
justification that there was an error . . . beyond any possibility
for fairminded disagreement." *Harrington v. Richter*, 562 U.S.
___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If
this standard is difficult to meet" — and it is — "that is because
it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not
lightly conclude that a State's criminal justice system has
experienced the extreme malfunctio[n]" for which federal
habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786
(internal quotation marks omitted).

Accordingly, Boobyyaa's application for the writ of habeas corpus (Doc. 1) is

**DENIED**.  The clerk must enter a judgment against Boobyyaa and close this case.

### DENIAL OF BOTH
### A CERTIFICATE OF APPEALABILITY
### AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Boobyyaa is not entitled to a certificate of appealability ("COA").  A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right."  To merit a COA,

Boobyyaa must show that reasonable jurists would find debatable both the merits of

the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would

debate either the merits of the claims or the procedural issues, Boobyyaa is entitled to

neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Boobyyaa must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 4, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE